CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

November 13, 2019

LETTER TO THE PARTIES

RE: *Reuben B. v. Commissioner, Social Security Administration*;
Civil No. DLB-19-773

Dear Plaintiff and Counsel:

On March 13, 2019, Plaintiff Reuben B., who appears *pro se*, petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. ECF 1. Plaintiff did not file a motion for summary judgment before the filing deadline, but I have considered the SSA's motion for summary judgment and Plaintiff's filings, including his correspondence sent to the Administrative Law Judge ("ALJ") and a disability work assessment.[1] ECF 10, 16. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny the SSA's motion and remand the case to the SSA for further evaluation pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff protectively filed his claims for benefits on July 22, 2016, alleging a disability onset date of June 30, 2016. Tr. 190-203. His claims were denied initially and on reconsideration. Tr. 122-29, 132-37. An Administrative Law Judge ("ALJ") held a hearing on May 2, 2018, at which Plaintiff waived his right to counsel. Tr. 24-63. Following that hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 11-19. The Appeals Council denied Plaintiff's request for review, Tr. 1-5, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that Plaintiff suffered from the severe impairment of "affective disorder." Tr. 14. Despite this impairment, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

---

[1] After the SSA filed its motion, the Clerk's Office sent a Rule 12/56 letter to Plaintiff, advising him of the potential consequences of failing to oppose the dispositive motion. ECF 17. Plaintiff did not file a response.

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to performing simple, routine tasks, can frequently interact with supervisors and coworkers, and rarely interact with the public. Regarding changes in the work setting, he is limited to making simple work-related decisions.

Tr. 16. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff was capable of performing his past relevant work as a custodian as Plaintiff actually performed the job and as it is generally performed. Tr. 19; *see* U.S. Dep't of Labor, *Dictionary of Occupational Titles* § 381.687-026 (4th ed. 1991). Accordingly, the ALJ concluded that Plaintiff was not disabled. *Id*.

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the SSA's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings).

The ALJ proceeded in accordance with applicable law at the first two steps of the sequential evaluation. The ALJ ruled in Plaintiff's favor at step one, and determined that he had not engaged in substantial gainful activity since his application date. Tr. 14; *see* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ then considered the severity of each of the impairments that Plaintiff claimed prevented him from working, finding his affective disorder to be severe. Tr. 14; *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ determined that Plaintiff's bilateral knee arthritis, obesity, and substance addiction disorders were not severe impairments because the record demonstrated that they had "no more than a minimal effect on the claimant's ability to meet the basic demands of work activity." Tr. 14-15 (citing Tr. 330-33, 344-49).[2]

At step three, the ALJ determined that Plaintiff's impairment did not meet or medically equal the criteria of any listings. Tr. 15-16; *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). In particular, the ALJ identified and considered Listings 12.03 (schizophrenia

---

[2] The Court notes that Plaintiff included in his appeal to the Appeals Council and this Court a copy of his October 2017 disability work assessment conducted by Physical Therapist, Sophie Jones. Tr. 10 at 10, 12-17. The ALJ thoroughly discussed Jones's assessment, including her opinion that Plaintiff could not lift or carry more than ten pounds and could not stand or walk longer than two hours per day. Tr. 14-15. However, the ALJ found that the assessment "represents the sole evidence of any physical dysfunction and Ms. Jones appears to have based her entire assessment on the 1.5 hours of observation during this one encounter." Tr. 15. The ALJ permissibly concluded that Jones's assessment did not support a finding that Plaintiff's physical impairments had lasted, or were expected to last, for a continuous period of twelve months. *Id*.; *see* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii), 416.909 (to meet the "duration requirement" at step two, "[u]nless [the] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.").

spectrum and other psychotic disorders) and 12.04 (depressive, bipolar, and related disorders). The ALJ had to apply the special technique applicable to mental impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00 (2018). The technique requires analysis of: (1) "paragraph A criteria," which consist of a set of medical findings; (2) "paragraph B criteria," which consist of a set of impairment-related functional limitations; and (3) "paragraph C criteria," which relate to "serious and persistent" disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment. *Id.* § 12.00(A), (G). A claimant's impairment meets Listing 12.04 by satisfying either the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. *Id.* § 12.00(A)(2). Paragraph B consists of four broad functional areas including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *Id.* § 12.00(A)(2)(b). The SSA uses a five-point scale to rate a claimant's degree of limitation in the four areas: none, mild, moderate, marked, or extreme. 20 C.F.R. § 416.920a(c)(4). A claimant must show extreme limitation in one area, or marked limitation in two areas, to be deemed to have met the paragraph B criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04(B) (2018).

Here, the ALJ assigned a rating to the "paragraph B criteria." The ALJ found that Plaintiff had a "moderate" limitation with regard to his abilities to interact with others, and to concentrate, persist, or maintain pace; and a "mild" limitation with regard to his abilities to understand, remember, and apply information, and to adapt or manage himself. Tr. 15-16.

The ALJ continued with the sequential evaluation and considered, in assessing Plaintiff's RFC, the extent to which his impairment limited his ability to work. In his analysis, the ALJ summarized Plaintiff's subjective complaints from his hearing testimony, and provided a detailed review of his medical records. Tr. 16-18. The ALJ noted, among other findings, that there was "very little evidence in the record to support mental health limitations on or after the alleged onset date, and the evidence prior to the relevant period reflects minimal and inconsistent treatment." Tr. 17. The ALJ discussed Plaintiff's hospital admissions in 2000 or 2001 and 2005 for delusional states, and treatment at a psychiatric clinic in 2005 to 2006. *Id*. The ALJ noted that Plaintiff did not return to the clinic despite its attending psychiatrist's recommendation of continued mental health treatment.[3] Tr. 17-18. The ALJ gave "great weight" to the opinions of the State agency mental health consultants who reviewed Plaintiff's records, which included a psychiatric consultative examination of Plaintiff by Dr. Phillips in November of 2016. Tr. 18. The ALJ also considered and gave little weight to a third-party statement from a member of Plaintiff's family. *Id*. The ALJ concluded that, while the record supports a finding of severe mental health symptoms, "there is little evidence to support a conclusion that these symptoms interfere with the claimant's functioning to such a degree as to prevent him from being able to perform work-related activities with the limitations noted in the [RFC]." *Id*.

The fatal flaw in the ALJ's reasoning lies in the dictates of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). In that case, the Fourth Circuit determined that remand was appropriate for

---

[3] Plaintiff additionally reported to Dr. Phillips at his consultative examination that he had had six psychiatric hospitalizations as recent as 2010. Tr. 323.

three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. *Id.* at 638. That functional area of concentration, persistence, or pace "refers to the abilit[y] to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(3) (2018). Social Security regulations do not define marked limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations offer little guidance on the meaning of "moderate" limitations in the area of concentration, persistence, or pace.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

Here, the ALJ found that Plaintiff had moderate difficulties maintaining concentration, persistence, or pace. Tr. 16. The ALJ's analysis stated:

> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. There is some indication that the claimant's concentration may be affected by his paranoia and anxiety symptoms, and he did demonstrate difficulty completing serial seven subtractions. However, he was able to follow the three-step direction on the mini mental state examination. In addition he has endorsed being able to drive, watch television (including the news), play video games, and use the internet.

Tr. 16 (internal citations omitted). In his RFC assessment, the ALJ noted Plaintiff's testimony that his symptoms interfere with his ability to concentrate, Tr. 17, as well as Dr. Phillips's notes that "[a]lthough the claimant endorsed a good mood at the examination, he indicated that his usual mood is variable, and that he can go from being acutely paranoid, apprehensive, and manic, to be very down and depressed with a loss of interest in activities, decreased concentration and variable sleep," Tr. 18 (citing Tr. 323). Furthermore, the ALJ gave great weight to the State consultants' opinions. *Id.* At the initial level, the State consultant found that Plaintiff had limitations in concentration and sustaining pace, but opined that the record "[did]

not preclude simple repetitive tasks in a competitive work setting with limited contact with the public." Tr. 73, 82. On reconsideration, the State consultant opined that, although Plaintiff was "[a]ble to ask simple questions and complete simple tasks," he "would have moderate limitations in dealing with consistent pace and interruptions from psych symptoms." Tr. 97, 113. However, the ALJ did not explain why Plaintiff's limitations with concentration and pace did not affect his ability to sustain an eight-hour workday. The restriction to "simple, routine tasks" is directly analogous to the limitations deemed insufficient in *Mascio*. 780 F.3d at 638 (quoting *Winschel,* 631 F.3d at 1180) (finding "simple, routine tasks or unskilled work" to be insufficient to address a claimant's moderate limitations in concentration, persistence, or pace). In the absence of any additional limitation to accommodate Plaintiff's moderate difficulties maintaining concentration, persistence, or pace, *Mascio* requires that the ALJ explain why no such limitation is required. *Mascio*, 780 F.3d at 638. The ALJ has not provided such an explanation here.

The Commissioner argues that the ALJ's RFC assessment is supported by substantial evidence and adequately accounts for Plaintiff's limitations. For support, he cites to the State consultants' opinions that "the evidence does not preclude Plaintiff from performing simple, repetitive tasks in a competitive work setting with limited contact with the public." ECF 16-1 at 12 (citing Tr. 73, 98). However, the Commissioner omits the fact that both State consultants, and the ALJ, found that Plaintiff had limitations in sustained concentration and persistence. Additionally, State consultant, Dr. Jennings, noted that Plaintiff was "moderately limited" in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 97. Dr. Jennings further opined that Plaintiff "would have moderate limitations in dealing with consistent pace and interruption from pysch symptoms." *Id.* The ALJ gave Dr. Jennings's opinion "great weight," but neither the ALJ nor Dr. Jennings explained why Plaintiff's moderate limitations in concentration, persistence, and pace did not affect his ability to perform an eight-hour workday.

In light of the ALJ's inadequate RFC assessment, I need not address whether the remainder of the ALJ's analysis complied with the relevant legal standards. In ordering remand for further consideration by the SSA, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing order follows.

Sincerely yours,

/s/

Deborah L. Boardman
United States Magistrate Judge